IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **WILLIAM G. GIBBS,**<br><br>    **Plaintiff,**<br><br>vs.<br><br>**PROFESSIONAL INVESTORS INSURANCE GROUP, INC., and EUGENE PHILLIPS,**<br><br>    **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No.  2:04CV941DAK |

    This matter is before the court on Defendant Gene E. Phillips's Motion to Dismiss asserting two independent grounds for dismissal.  First, Phillips contends that this court lacks personal jurisdiction over him.  Second, Phillips argues that Gibbs's claims are barred under Utah's Statute of Frauds because the alleged agreement was not in writing.  The court held a hearing on the motion on February 22, 2006.  At the hearing, Plaintiff was represented by Erik A. Olson, and Defendant Phillips was represented by Jason McNeill.  The court has carefully considered the pleadings, memoranda, and other materials submitted by the parties, as well as the law and facts relating to this motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

    Gibbs alleges that Phillips owns Professional Investors Insurance Group, Inc. and one of

its subsidiaries United Republic Life Insurance Company.  Phillips does not deny ownership of the companies, but he claims that Gibbs has no support for the allegation regarding ownership. Phillips states in his Affidavit that he was never an officer, director, or employee of PIIGI or United Republic without addressing ownership.  Gibbs does not claim to know what position Phillips has held in PIIGI and United Republic, but he claims that as owner of these companies, he has exercised ultimate control in the decision making of the companies.

With respect to corporate affiliations, Phillips admits only that he is President of Syntek West, Inc., which acted as an advisor and administrative agent for numerous private entities, including One RealCo Corporation (formerly known as Davister Corporation) and TacCo Financial, Inc. (formerly known as MS Holdings, Inc. and Institutional Capital Corporation). Both of these companies had ties with United Republic in the early 1990s.

Gibbs alleges that in the late 1980s, Phillips visited him at his office in Salt Lake City for the first time.  Phillips asked Gibbs if they could arrange for an insurance company in Utah that could be owned by Phillips's son.  Several months later, Darrell Jordan, an employee of Phillips, retained Gibbs to serve as Utah legal counsel for one of Phillips's companies, United Republic, and to redomesticate United Republic from Pennsylvania to Utah.

After Gibbs successfully redomesticated United Republic to Utah, Phillips, who was then chairman of the board of directors of United Republic, asked Gibbs to become the president and general counsel of United Republic.  Gibbs accepted Phillips's offer.  Gibbs's annual salary was $90,000 per year for one-half time employment plus substantial additional benefits.  Gibbs was told at the time that he could continue to work as a lawyer in private practice during the balance of his time.

Throughout the period of time that Gibbs worked for and provided legal services for United Republic, Phillips had ultimate authority with respect to any important decisions. Gibbs made no major decisions without making sure that Phillips approved. During the period of years that Gibbs represented United Republic, he received several telephone calls from Phillips at his office in Salt Lake City that related to the subject matter of Gibbs's representation of United Republic. Plaintiff also received numerous telephone calls from other agents of Phillips, including Terry Shumate, Bill Gibson, and Darrell Jordan.

Throughout this time period, Gibbs also met with Phillips several times in Dallas, Texas. On one occasion in or about the fall of 1991 or 1992, Gibbs and his son had lunch with Phillips at Phillips's home. Gibbs commented to Phillips that in his dealings with Jordan, Jordan had shown great hospitality. Phillips responded that it was not Jordan showing great hospitality because, Phillips emphasized, he owned "the whole enterprise."

In the late 1990s, the Utah State Department of Insurance commenced an insolvency proceeding with respect to United Republic. Phillips requested that Gibbs arrange for all holders of debt of United Republic to withdraw their claims against United Republic. Davister and MS Holdings engaged in a series of transactions with United Republic in the early 1990s whereby they contributed real estate properties to United Republic in exchange for securities issued by United Republic and guaranteed by PIIGI. When United Republic was placed into receivership, Phillips states that he assisted and advised MS Holdings and Davister with their effort to recover value for the properties that had previously been transferred. MS Holdings and Davister were two of the larger creditors of United Republic in the receivership proceedings.

In the late 1990s, Phillips attended several meetings in Texas in which Gibbs was

present. At these meetings, Gibbs's employment and role with United Republic was a topic of discussion. Gibbs claims that in March 1997, he met with Phillips and Jordan to settle and resolve his claims for compensation, which Gibbs agreed to withdraw based on United Republic's insolvency proceeding. At that meeting, Gibbs maintains that Phillips indicated that payment would be made to Gibbs in the amount of $30-40,000 per year over the course of five years. Gibbs alleges that he expressed to Phillips that he was concerned that PIIGI would become incapable of paying the debt in the future and that Phillips agreed to pay the debt. Phillips asserts that he never personally promised to pay any money to Gibbs and that he had no reason to do so because he did not stand to benefit personally from the transactions involving PIIGI and United Republic. Gibbs alleges that Phillips agreed to pay money to him to ensure that United Republic could survive the insolvency proceedings brought by the State of Utah.

    Gibbs asserts that he prepared a bill dated April 2, 1997, setting forth the payment schedule to which Phillips had agreed. The payment schedule required immediate payment of the first payment of $30,000, along with payment for an additional $2500 in expenses. Gibbs alleges that Phillips indicated his approval of the payments by writing "OK" on the bill, signing his initials, and proceeding to make the first payment of $32,500. Gibbs continued to render legal services to Phillips, PIIGI, and United Republic, and was routinely paid for his costs in advance, such as travel and lodging.

    On May 31, 2001, Gibbs wrote to Phillips and PIIGI's counsel requesting payment of the past due and unpaid installments. On September 28, 2001, Gibbs met with Phillips concerning the balance due to him. At that meeting, Phillips indicated that Gibbs would receive $4000 per month until the balance owed was completely repaid, together with interest at the rate of 7% per

annum.  Gibbs began receiving monthly payments of $4000, but only received a total of $48,000.

Phillips asserts that he never traveled to Utah to meet with Gibbs regarding PIIGI. Phillips admits that he has traveled to Utah on one or two occasions in his capacity as an officer or an advisor to MS Holdings and Davister, but he claims that he did so only to discuss the status of their claims in the receivership.  Phillips contends that none of the trips to Utah involved the business of PIIGI or the circumstances of this case.

Gibbs, in contrast, asserts that Phillips traveled to Utah when he first sought Gibbs' legal services and that Phillips and his agents have initiated numerous telephone conversations with Gibbs in Utah since that time relating to Gibbs's legal representation.  Gibbs, therefore, claims that Phillips has had multiple contacts with Utah that relate to this case on his own and through his agents, including the hiring of and communications with Plaintiff as Utah counsel to assist with business Phillips has attempted to conduct in the State of Utah through companies he owned.

Phillips claims that he has no contacts with the State of Utah that were not made in his capacity as an officer of an advisor to MS Holdings and Davister.  Phillips is not, nor has he ever been, a resident of the State of Utah.  He has no bank accounts and does not own any property in the State of Utah.

## DISCUSSION

### I.  Phillips' Motion to Dismiss

Phillips's Motion to Dismiss asserts that this court lacks personal jurisdiction over him and that Gibbs's claims are barred under Utah's Statute of Frauds because the alleged agreement was not in writing.  The court must decide the jurisdictional issue before reaching the merits of

the claim. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) (court may decide personal jurisdiction before subject matter jurisdiction); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) (court must address issues of jurisdiction before reaching merits).

**A. Personal Jurisdiction**

Gibbs does not contend that Phillips is subject to general jurisdiction in Utah. Therefore, the only issue with respect to personal jurisdiction is whether there is specific jurisdiction over Phillips within the State of Utah related to this case. The parties do not dispute the legal standard to be applied.

There is a three-part inquiry to invoke specific jurisdiction. *Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1298 (10th Cir. 1999). First, Utah's long-arm statute must permit the exercise of personal jurisdiction. Second, there must be a "nexus" between plaintiff's claims and defendant's acts or contacts. Third, the application of Utah's long-arm statute must satisfy the requirements of federal due process–i.e., the exercise of personal jurisdiction over defendant must not offend traditional notions of fair play and substantial justice.

Utah's long-arm statute states that any person submits himself to the jurisdiction of Utah courts as to "any claim arising from . . . the transaction of any business within this state." Utah Code Ann. § 78-27-24. The statute broadly defines "transaction of business" to mean "activities of a non-resident . . in this state which affects persons or business within the State of Utah." *Id.* § 78-27-23(2). Since Utah's long-arm statute extends to the extent consistent with due process, the inquiry is whether Phillips has the requisite minimum contacts with Utah specifically related to this case for this court to exercise jurisdiction. Phillips must have purposefully directed his activities at residents of Utah and the litigation must have resulted from alleged injuries arising

out of or relating to those activities.

It is Gibbs' burden to establish that this Court has personal jurisdiction over Phillips. *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). However, "[w]hen the evidence presented on the motion to dismiss consists of affidavits and other written materials, the plaintiff need only make a prima facie showing." *Bell Helicopter Textron, Inc. v. Heliquest Int'l Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004). And, the "court must resolve all factual disputes in favor of the plaintiff." *Id.* "When a plaintiff 'relies on facts alleged in his unverified complaint for his assertion of jurisdiction' and the defendant responds with an 'affidavit setting forth its version of the jurisdictional facts,' [then], 'the facts asserted in the affidavit are taken as true and the facts recited in the complaint are considered only to the extent that they do not contradict the affidavit.'" *MFS Series Trust III MFS Municipal High Income Fund v. Grainer*, 96 P.3d 927, 931-32 (Utah 2004) (quoting *Arguello v. Indus. Woodworking Mach. Co.*, 838 P.2d 1120, 1121 (Utah 1992).

Phillips asserts that his conduct, as alleged in Gibbs's Amended Complaint, consists of actions undertaken in his corporate rather than individual capacity and absent some attempt to pierce the corporate veil, he cannot be subject to any personal liability for the actions of PIIGI. For essentially the same reasons, Phillips also claims that he cannot be said to have personally transacted business in the State of Utah.

Gibbs, in contrast, argues that the evidence shows that Phillips, individually and through his agents, transacted business in Utah because his activities have affected plaintiff within Utah. Phillips and his agents retained Gibbs to work for and provide legal services to United Republic, a company owned by Phillips. At Phillips's request, Gibbs withdrew his claim for payment

against United Republic in consideration for Phillips and PIIGI's agreement to assume the indebtedness. Phillips, however, ultimately defaulted in his payment obligations to Gibbs.

Although Phillips asserts that Gibbs has not provided support for his contention that Phillips is the owner of United Republic, he does not deny ownership. Phillips merely states that he was not an officer or employee of the company. In addition, Gibbs has not rested only on the allegations of his Complaint, he has filed an Affidavit controverting many of the facts asserted by Phillips. This court is charged with construing the facts in favor of Plaintiff on the jurisdictional issue where the evidence has been submitted by affidavit.

Phillips claims that PIIGI, not Phillips, owns United Republic. However, Phillips' affidavit states only that United Republic is a subsidiary of PIIGI. If Phillips owns PIIGI as alleged by Gibbs, then he also owns United Republic. Because there is no direct allegation in Phillips' affidavit stating that he does not own United Republic, the court must assume as true that Gibbs was, in fact, the owner of United Republic. It is undisputed that United Republic was incorporated in Utah. Gibbs also alleges, and this court must construe in his favor, that Phillips made all of the important decisions concerning United Republic. Phillips makes no allegation disputing this statement of fact.

Phillips states in his Affidavit that he has had no contact with the State of Utah except in his capacity as an officer of MS Holdings and Davister. Gibbs' affidavit contradicts Phillips's assertion. In construing the factual allegations in favor of Gibbs, the court must assume that Phillips and Gibbs met in Salt Lake City at the beginning of Gibbs' dealings with Phillips, that Phillips and his agents had several telephone conversations with Gibbs in Utah regarding his representation of United Republic, and that Phillips personally agreed to pay Gibbs' for his

services.

Phillips' ownership of a company incorporated in Utah, while alone would be insufficient under current Utah law, is sufficient when coupled with his contacts with Gibbs in Utah while Gibbs was president of United Republic for this court to conclude that the exercise of personal jurisdiction over Phillips does not offend traditional notions of fair play and substantial justice. Phillips purposefully directed his activities at Gibbs, a resident of Utah. Gibbs could not make major decisions for the company without the approval of Phillips. The court cannot find that Phillips would not have anticipated being haled into a Utah court with respect to this matter.

Moreover, the litigation arises out of or relates to Phillips's contacts with Gibbs in Utah. Gibbs's claim is based on Phillips's failure to make payments to him for work he performed for United Republic. Phillips asserts that the claim is based on an alleged agreement reached in Texas. The payments, however, were to be made to Gibbs in Utah and were compensation for work performed in Utah. Accordingly, the court concludes that Phillips has the requisite minimum contacts with Utah specifically related to this case for this court to exercise jurisdiction.

**B.  Statute of Frauds**

Phillips contends that Gibbs's claim for payment under alleged oral agreements is void under the Statute of Frauds because each agreement was oral, was to pay the fees owed by United Republic, and was to be performed over the course of several years. Utah's Statute of Frauds provides that "[t]he following agreements are void unless the agreement, or some note or memorandum of the agreement, is in writing, signed by the party to be charged with the agreement:" "(a) every agreement that by its terms is not to be performed within one year from

the making of the agreement" and " (b) every promise to answer for the debt, default, or miscarriage of another." Utah Code Ann. § 25-5-4(1)(a), (b).

Gibbs alleges that in March of 1997 he met with Phillips and Jordan to settle and resolve his claims for compensation and that Phillips indicated that payment would be made to Gibbs in the amount of $30,000 the following month and then $40,00 per year for five years. Gibbs prepared a bill, dated April 2, 1997, setting forth payment for $2500 in expenses and the payment schedule as agreed to at the meeting. Phillips wrote "OK" on the bill and signed his initials. The first payment was made in the amount of $32, 500. But the subsequent installments were not paid. On May 31, 3001, Gibbs wrote to Phillips requesting payment of the past due amounts. On September 28, 2001, Gibbs met with Phillips concerning the unpaid amounts. At that meeting, Gibbs alleges that Phillips indicated that Gibbs would receive $4000 per month until the balance owed was repaid, together with 7% per annum interest. Gibbs received monthly payments of $4000 for twelve months. According to Gibbs, the outstanding balance in September 2001 was no less than $200,000.

Gibbs's 1997 invoice is "some note or memorandum of the agreement, . . . signed by the party to be charged with the agreement." Utah Code Ann. § 25-5-4. The invoice notes the amounts due and when they shall be paid. And, Phillips indicated "OK" and initialed it. To the extent that Phillips contends that the agreement is too ambiguous to be enforceable, such arguments go to the enforceability of the contract, not whether it meets the statute of frauds.

Phillips asserts that because Gibbs' breach of contract claim against Phillips is based on an alleged September 28, 2001 oral agreement that required Phillips to pay Gibbs the sum of $4000 per month in satisfaction of the balance due under a prior oral agreement made in March

1997, the modification of the March 1997 agreement must also be in writing. "The rule is well settled in Utah that if the original agreement is within the statute of frauds, a subsequent agreement that modifies any of the material parts of the original must also satisfy the statute." *Allen v. Kingdon*, 723 P.2d 394, 396 (Utah 1986). Phillips contends that because the 2001 modification is not in writing it is void under the statute of frauds.

A modification need not satisfy the statute of frauds "where a party has changed position by performing an oral modification so that it would be inequitable to permit the other party to found a claim or defense on the original agreement as unmodified." *See Allen v. Kingdon*, 723 P.2d 394, 396-97 (Utah 1986). In this case, Gibbs changed his position by permitting PIIGI and Phillips, in late 2001, to extend their payments beyond the time frame set forth in their original written agreement. Based on Gibbs' change of position, it would be inequitable for the court to require a written modification to the original, written agreement between the parties.

In addition, the statute of frauds is satisfied by part performance. *See Holt v. Katsanevas*, 854 P.2d 575, 579-81 (Utah Ct. App. 1993); *George Fisher Jr. Family Inter Vivos Revocable Trust v. Fisher*, 907 P.2d 1172, 1176-77 (Utah Ct. App. 1995). Utah courts have held that the "partial performance" exception to the statute of frauds requires that the acts performed would not have been performed had the oral contract not existed. *See, e.g., Martin v. Scholl*, 678 P.2d 274, 275 (Utah 1983). In this case, Phillips's $4,000 monthly payments for one year after the payment schedule was modified would not have occurred if the original agreement had not been modified. Moreover, these monthly payments are "sufficient, as a matter of law, to exempt the entire oral agreement from the proscriptions of the statute of frauds." *Holt*, 854 P.2d at 581.

11

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is DENIED with respect to both personal jurisdiction and the statute of frauds.

DATED this 20th day of March, 2006.

> BY THE COURT:
>
> _____
> DALE A. KIMBALL
> United States District Judge